PENNSYLVANIA GLOBE GASLIGHT CO. v. CLEVELAND VAPOR
LIGHT CO.

(Circuit Court, D. Rhode Island. February 9, 1907.)

No. 2,677.

PATENTS—INVENTION—INCANDESCENT BURNERS.

The Campbell patent, No. 447,757, for an improvement in incandescent burners and method of using the same, claim 2, which covers the combination in a portable lamp of a Bunsen burner, a Welsbach mantle, and a gasoline vapor generator, the entire device above the orifice of the generator being that of Welsbach, is void for lack of invention; the gas generator itself being old, and it having been open to the inventor of the Welsbach device to use any known form of gas generator, stationary or portable, to feed his Bunsen burner. If conceded invention, the patent is void for anticipation by the British patent to Siemang, No. 8097, of 1886.

In Equity. On final hearing.

Wm. Findlay Brown, Thos. W. Bakewell, Edwards & Angell (Clarence P. Byrnes, of counsel), for complainant.

Redding, Kiddle & Greeley (William A. Redding, of counsel), for defendant.

BROWN, District Judge. This suit is for infringement of letters patent No. 447,757, granted March 10, 1891, on an application filed March 5, 1889, to Harry C. Campbell, for an improvement in incandescent burners and method of using the same. The opinion of this court denying a petition for a preliminary injunction may be found in 140 Fed. 348.

The principal defenses are that the patent is void for want of invention, and that both the British specification of Cooper, No. 420, of 1883, and the British patent to Siemang, No. 8097, of 1886, exhibit a substantial representation of the patented invention in such full, clear, and exact terms as to enable any person skilled in the art or science to which it appertains, without the necessity of making any experiments, to practice the invention.

The claims are as follows:

"(1) The method of employing hydrocarbon fluids for illuminating purposes herein described—that is to say, vaporizing the hydrocarbon liquid by heat, and causing the heated vapor to pass in a fine stream under considerable pressure through an air-mixing chamber, and igniting the heated mixture of hydrocarbon fluid and air in presence of a refractory substance capable of incandescence, substantially as described.

"(2) The combination, in one device, as a portable incandescent lamp, of a Bunsen burner, an incandescent filamentary substance, and a self-generating and heating-gas attachment, substantially as described."

The complainant's argument is based upon claim 2, which describes the elements of Campbell's combination, "an incandescent filamentary substance" (by which he means a Welsbach mantle), a Bunsen burner, and a self-generating and heating-gas attachment. The self-generating and heating-gas attachment constitutes the only novelty in apparatus. Campbell admits that the whole device above the jet orifice of the gas apparatus was procured from the Welsbach Company.

The Welsbach incandescent mantle has been recognized as a most important invention, and our primary inquiry is whether the Campbell patent shows any invention other than that of Welsbach.

It is well known that, in producing light by the Welsbach apparatus, illuminating gas is used, not to produce light by its combustion, but to produce a blue flame of high temperature, which heats the mantle to incandescence, thus furnishing light. The substance of the Welsbach invention was the production of a mantle that could be heated to incandescence. The means for supplying the necessary heat were at hand in the well-known Bunsen burner. A Bunsen burner, as well as the incandescent mantle, was comprised in the Welsbach apparatus.

It has been very clearly shown by this defendant that it was well known that a Bunsen burner could be supplied either with ordinary illuminating gas or with gasoline vapor generated from a portable device. The combination of a portable gasoline vapor-producing device and a Bunsen burner was well known. Thus, in patent No. 219,737, of 1879, to Kellog, is shown a portable gasoline-fed Bunsen burner which is described by complainant's expert as "a rather well-arranged device for burning hydrocarbon vapor and to produce the Bunsen flame." At the hearing, a Welsbach mantle was heated to incandescence by a lamp of this kind.

As was noted in the previous decision, in a former suit upon this patent by this complainant against Best ([C. C.] 137 Fed. 940), it was contended that none of the devices of the prior art was capable of heating the Welsbach mantle to incandescence. Such a contention is out of the question in this case. The defendant has demonstrated the existence of many gasoline-fed Bunsen burners prior to Campbell's invention.

The complainant first contends that, though the Welsbach mantle was old, and though a gasoline-fed Bunsen burner was old, Campbell's conception that they could be combined so as to produce a portable incandescent lamp was an inventive conception. If so, it must be because it was something not fairly comprehended in the scope of Welsbach's important invention. It seems a fair test of whether there is anything in Campbell's combination, which was not already in substance in the Welsbach invention, to inquire whether the inventor of the Welsbach mantle could have been precluded from using it upon a Bunsen burner fed with gasoline vapor from a portable generator, after he had already demonstrated that it could be heated to incandescence on a Bunsen burner using ordinary illuminating gas. If Campbell's thought of supplying the Welsbach apparatus, comprising mantle and Bunsen burner, with gasoline vapor from a portable generator, arose to the height of an invention, it follows that the inventor of the Welsbach mantle could not have used what would seem to be an equivalent means of heating.

Can there be a fair doubt that, upon a contest between the inventor of the Welsbach mantle and Campbell, it would have been held that any known type of heater commonly used for producing high temperatures was merely an equivalent for the heater used by Welsbach? Assuming that the Bunsen burner used by Welsbach to heat his mantle

to incandescence was fed with illuminating gas, can it be claimed that he would have made a new invention, an additional invention, by putting his mantle over an existing type of Bunsen burner fed with gasoline vapor from a portable generator?

It is said that Campbell, by selecting a portable heater fed by gasoline vapor, accomplished something more than simply heating the Welsbach mantle; that by using a vapor generator of small size he was not limited to the proximity of a gas plant, but could make the Welsbach mantle give forth its light in isolated districts where there was no gas plant; and that the perception that this could be done was invention. It is very clear, however, that the Welsbach mantle was an invention not in its nature restricted to use in the proximity of a gas plant or in thickly populated districts. Welsbach was not tied down to any particular source from which he might derive the fuel to be fed to his Bunsen burner; and the gas works from which Welsbach may possibly have derived his gas was, of course, no part of his combination. The apparatus and mantle of Welsbach have always been portable. They can be used equally well on individual gas plants in remote localities, and at any place where proper fuel can be procured to produce the blue flame of a Bunsen burner. The advantages of a portable gas generator over a city gas plant are familiar. Portability is a mere question of weight and size of the vapor generator.

There is nothing in Campbell's specification which points out that he claimed to have made an invention by using a portable, as distinguished from a stationary, gas plant, to feed a Bunsen burner; and this contention as to portability has its only foundation in the words of the second claim, "the combination, in one device, as a portable incandescent lamp." There is no evidence to show that there was any advantage in the portability of a gasoline generator, the Bunsen burner, and the incandescent mantle when combined as a unitary structure. It is not shown that the assemblage of these three elements in a unitary structure for the purpose of transportation is a matter of any consequence. If it is, a person who carried to a post in a remote district the gasoline generator, the Bunsen burner, and the mantle separately, and there assembled them in a fixed position on the post, would avail himself of none of the advantages of the portability as a unitary structure.

Welsbach was entitled to use any form of gas generator, whether portable or stationary, in feeding his Bunsen burner; and it would approach an absurdity to limit the territory in which he could use his Bunsen burner and his incandescent mantle to such territory as was connected by gas mains to some central gas station.

While the complainant's argument that Campbell brought the Welsbach light into remote districts, and brought to the home of the farmer the incandescent light, may have some rhetorical value upon a first hearing, it requires but little consideration to see that it was the Welsbach invention, and the demonstration by Welsbach that a Bunsen burner would heat the mantle, which gave to the world the immediate suggestion to try all available forms of Bunsen heating appliances for this purpose. But, even should we assume that there was some ad-

vantage of convenience arising from the portability of the gasoline generator, the perception of this advantage does not, in my opinion, constitute invention. Jones v. Clow (C. C.) 39 Fed. 785.

There is another aspect of this question. The suggestion that a gas-fed apparatus which gave light by the combustion of ordinary gas could be changed by adding a Bunsen burner, so that the gas should be used to produce a blue flame, and this flame be used to heat an incandescent mantle, was a suggestion applicable alike to fixtures using ordinary gas and to fixtures using gas or vapor of other kinds. The use of illuminating gasoline lamps in isolated districts was very general; and, as the prior art taught that gasoline vapor could be used in the same manner as illuminating gas, both for the purposes of illumination and heating, there would not seem to have been room for invention, after one class of gas apparatus had been used in this way in connection with a Welsbach mantle, to use another class of gas apparatus in the same way. At least, in the absence of evidence that there were greater difficulties in producing a blue flame from gasoline vapor burners than from ordinary gas burners, and that the overcoming of such difficulties required more than ordinary skill, it would seem to be substantially the same to fit a Bunsen burner and a Welsbach mantle to any form of gas or vapor burning device. Such changes in the size of air inlets as might be necessary to adapt Bunsen burners to different forms of gas burning devices are not shown to require more than the ordinary knowledge of persons skilled in the art.

By reference to the patent in suit, however, it will be seen that Campbell described his invention in the following language:

"I have discovered that by injecting hydrocarbon fluid in a heated and vaporous condition and under considerable pressure through a Bunsen burner, where it is mixed with a sufficient quantity of atmospheric air, into, through, or against a refractory body, which will become incandescent by the heat of the ignited hydrocarbon vapor, a very intense light is produced far exceeding in candle power any light which has been heretofore obtained by the burning of coal gas under ordinary pressure through the intervention of a Bunsen burner and in contact with such refractory body."

This, in substance, is a claim that Campbell discovered a new effect. Evidence is offered tending to show that a naptha incandescent lamp will show a greater candle power of light than it is possible to obtain from a gas lamp consuming three feet of gas per hour, and at much less cost. One of the witnesses says:

"I should say that a naptha burner in perfect condition shows anywhere from nine to ten candle power more light than a gas burner consuming three feet of gas per hour."

Another witness testifies to a photometric test showing that, on comparing a Campbell lamp with a gas burner using a similar mantle supplied with three cubic feet of gas per hour, he found that the gas lamp gave a light of 65 candle power and the naptha lamp a light which reached 95 candle power. Evidence is offered that three cubic feet of gas per hour was the usual and ordinary rate of consumption.

The defendant contends that this evidence is of no value, since a fair comparison of efficiency requires an equal pressure as a basis of comparison. These tests are criticised as not made with the apparatus

of the patent in suit. Witnesses for the defendant testify that it is as easy to get high candle power from a Welsbach mantle with the ordinary Welsbach burner using inferior city gas as it is to get high candle power from the Welsbach mantle with the gasoline vapor burner, and that single-burner incandescent lamps burning city gas are capable of yielding candle power from 50 to 125, and that candle power is merely a question of pressure and volume of gas.

I am not satisfied that the defendant has fully met the contention of the complainant on this point. If it is the fact that the ordinary gas pressure available for use with incandescent mantles is but three feet per hour, and that the complainant's device generates a greater gas pressure in remote places than is ordinarily obtainable in cities, this would perhaps be a practical advantage which might possibly be sufficient to support the patent as for practical means for obtaining a greater degree of light with the incandescent mantle for domestic purposes than is ordinarily obtainable.

If this is a discovery of importance made by Campbell, it is clear upon the record that this discovery could not have been made by him previous to September, 1887, when he procured from the Welsbach Company what is described as the complete apparatus above the jet orifice. In interference proceedings in the Patent Office in 1889, Campbell testified:

"I didn't feel satisfied with the thing until I got the Welsbach burner in September, 1887. I first tried this burner in September, 1887, but didn't get a very good light. I then took out the Welsbach gas check, hammered in the gas nipple a little, so as to contract the opening, and sawed out the air holes to make them larger. I then found I got a brilliant and beautiful light. If you will look at the exhibit which I put in evidence, you will see the marks of the hammer on the jet nose. This was in September, 1887."

While Campbell and others have testified to an experiment made with a small piece of Welsbach mantle in March, 1886, and even if it be conceded that that experiment was made, it is very clear that it was not until Campbell had secured, in September, 1887, means for experimenting with the complete Welsbach mantle, that he could have had any basis in his experiments for the statement which he makes in his patent as to the superior efficiency of the gasoline-fed lamp. Upon this view Campbell is clearly anticipated by the British patent to Siemang, No. 8097, which was applied for June 18, 1886, and accepted April 15, 1887. This is a complete anticipation. While some attempt has been made to criticise this lamp as inoperative, it is clearly proved that this criticism is unfounded. The defendant produced a Siemang lamp which was said by complainant's expert to be a fair embodiment of the construction of the lamp shown in the British Siemang patent. It was satisfactorily shown that this is an operative device. The defendant has also offered evidence to the effect that it is a practical and successful device in general use.

The complainant attempts to avoid this anticipation by testimony to the effect that in March, 1886, Campbell secured fragments of a Welsbach mantle which had been sent from London, and which was broken

,in transit, "not having a single piece of it left larger than about three-quarters to an inch in diameter." He describes his experiment:

"Being in that broken shape, I took some fine platinum wire, spread it back and forth across a loop of heavier, iron wire in the form, I might say, of a minute sample of tennis racket. That was to hold this Welsbach substance over the flame of the Bunsen tube. It further acted as a check in breaking the flame from the Bunsen tube, preventing the piece of Welsbach mantle from being blown away. In this way I made the test of the Welsbach mantle."

This testimony must be regarded with suspicion. It was given in May, 1906, and there is much justification for the defendant's statement that it is an afterthought. In interference proceedings in the Patent Office in 1889, Campbell three times repeated the history of his invention without reference to any experiments in March, 1886, with a piece of Welsbach mantle, although he makes specific reference to experiments in August, 1885, when he used the Fahnehjelm burner, or magnesium cones. After three times repeating his statement, he referred to his generating device, and said:

"I used this exhibit on the Fahnehjelm burner in 1885, the Steytler platinum burner in 1887, and on the Welsbach burner in 1887, 1888, and 1889."

While there is some corroboration of Campbell, it is quite easy to believe that witnesses did not, after the lapse of 17 years, distinguish between experiments with the Fahnehjelm mantle in 1885 and experiments with a small piece of Welsbach mantle. Aside from the fact that in the very careful accounts given in 1889 no reference was made to this experiment in 1886, the statement is intrinsically suspicious, in view of the exigencies of the case, which require the establishment of a date of invention earlier than September, 1887.

The Siemang patent shows the combination of the Welsbach mantle and a gasoline self-generating lamp. It is obvious that Campbell had made no invention until he had secured Welsbach's refractory material. He had previously stated that he did not secure a Welsbach mantle until 1887. The appearance, therefore, of a small piece of a Welsbach mantle in March, 1886, is very opportune. There also appears opportunely, in the statement as to the experiment of March, 1886, another implement. The Cooper specification of 1883, No. 420, referred to in the opinion on the petition for a preliminary injunction (140 Fed. 348, 350), is for apparatus involving the method of claim 1, and which was principally criticised as inoperative on the ground that its Bunsen burner was not provided with a gas cap or dome of wire gauze. An appliance of this character makes its appearance in connection with the fragment of a Welsbach mantle, and is referred to as performing, in conjunction with the gasoline Bunsen burner, that function which was said to be lacking in the apparatus of Cooper.

The evidence that an experiment with a fragment of a Welsbach mantle did precede the Siemang patent is unsatisfactory; but, even should we concede that such an experiment was made, yet, from the explicit statement that satisfactory light was not procured until 1887, it is very clear that it was not until after Siemang's date that Campbell acquired any knowledge which justified him in making the state-

ment that he has discovered how to produce a light "exceeding in candle power any light which has been heretofore obtained by the burning of coal gas under ordinary pressure through the intervention of a Bunsen burner in contact with such refractory body."

Upon the whole case, I am not satisfied that the Campbell patent discloses any invention other than that of Welsbach. If, however, the contention that Campbell secured a higher candle power than Welsbach has any substantial foundation, this does not save the patent from anticipation by Siemang.

The bill will be dismissed.